## Appeal of Every-Clean, Inc.

*O. Warren Higgins*, for appellant.

*Domenic D. Jerome*, for appellee.

LIPPINCOTT, J., November 28, 1966.—Appellant is a lessee and operator of a coin-operated laundry and dry-cleaning establishment located in a shopping center in Haverford Township zoned "H-Business". Said classification permits the use of a building for "laundry, dry cleaning or dyeing establishment when authorized as a special exception".

On May 23, 1962, the zoning board of adjustment granted a special exception permitting the present use and imposing, as a part of said exception, some 24 conditions and restrictions, two of which were: (1)

that the laundromat could only operate between the hours of 7:00 a.m. and 10:30 p.m. on weekdays, and not at all on Sundays, and (2) there should be at least one attendant or employe during all hours of operation. Appellant, although not the original applicant, specifically agreed in writing to comply with all conditions. The opinion of the zoning board also provided that ". . . the Board reserves the right to change, alter or amend any term or condition . . . upon application to it by applicant . . . ."

Applicant made a substantial investment in equipment and operated the establishment for nearly two years. During this period, losses were sustained. On March 19, 1964, an application was made to the board of adjustment to have the above two restrictions deleted. The evidence produced at a hearing before the board of adjustment indicates that many other competing coin-operated laundries in the area operate on Sundays and unattended. On May 11, 1964, the board of adjustment issued an order refusing to remove the restrictions on the ground that such deletion would be "contrary to the public health, safety, morals and general welfare of the neighboring residents".

An appeal to this court followed, and the Township of Haverford was subsequently permitted to intervene as a party defendant. The matter was argued before the court en banc on September 19, 1966 (we do not know the reason for the delay in listing the case for argument), and the case is now ready for decision.

Prior to the original application for a special exception in 1962, the Supreme Court of Pennsylvania, in Van Sciver v. Zoning Board of Adjustment, 396 Pa. 646 (1959), had specifically ruled that the imposition of nearly identical restrictions was improper and bore no reasonable relation to the health, safety, morals and general welfare of the public. With re-

spect to these two conditions, the court stated, pages 656-57:

"The condition imposed that the laundromat may not operate before 8 a.m. nor after 8 p.m. denies the appellant the use of this property when other automatic hand laundries are in operation. If crimes are to be committed or the machines are to emit odors or fumes, or this would become a hangout for unsavory persons, all of this could occur between 8 a.m. and 8 p.m. as well as before or after. If such conditions come about they could presumably be handled by lawful police action. We do not take in the sidewalks or subways at night and even taprooms lawfully operate until 2 a.m. The condition attached that the appellant may not operate on Sunday has absolutely no bearing upon the imaginative evils the zoning board listed in its findings. Sunday is no different from any other day as far as the mechanical condition of a machine, or to unsavory people committing possible crimes, or to a place being an allurement in the early hours of the morning. If Sunday operation is a violation of the Act of June 24, 1939, P.L. 872, §699.4, 18 P.S. §4699.4, making it a criminal offense to perform any worldly employment or business on Sunday, there are specific statutory methods of proscribing the activity. It is not for the zoning board of adjustment under the guise of a zoning regulation to enforce the criminal statutes of this Commonwealth. We hold only that the restriction is inappropriate and not that Sunday operation is lawful.

"The last condition that there be an attendant present on the premises at all times would remove from the operation of a laundromat all its attendant advantages. The widespread use by the public of this type of service is due basically to its low cost which results from the very fact that it is unattended. To require an attendant is tantamount to banning it. To justify the

requirement of an attendant, in a district zoned 'commercial', the board would equally have to require an attendant if a laundromat were zoned 'industrial' or the use of such laundromat in apartment houses zoned 'residential'. It must be remembered that the equipment in an unattended store is not only identical to the equipment in an attended store, but also to the equipment in the many apartment houses, military bases, universities, nurses' homes and similar institutions that have coin metered laundry facilities. Also, the mechanical operation of self-service stores and the equipment therein is no different from the usual washing operation at home where a housewife operates her own washing machine whenever she pleases. It is clear, therefore, that the conditions imposed not only are unreasonable but bear no reasonable relation to the health, safety, morals and general welfare of the public and would be an unnecessary, unwarranted and unreasonable intermeddling with the applicant's ownership of his property".

While Pennsylvania law permits the imposition of conditions and restrictions by a board of adjustment, it is clear that they must be reasonable and proper: Fifty-Fourth Street Center, Inc. v. Zoning Board of Adjustment, 395 Pa. 338. Since the Supreme Court has specifically ruled that the precise restrictions involved in the case at bar are unreasonable and improper, we believe that the zoning board in this case had no legal right to insist upon their imposition.

The township takes the position that appellant agreed in writing to conform to the conditions imposed and has, therefore, consented and lost its standing to complain. While we take judicial notice that such agreements have been frequently employed in zoning matters, they are frowned upon by the law. As was stated as long ago as 1936 in Bassett, Zoning 184:

"Contracts have no place in a zoning plan. Zoning, if accomplished at all, must be accomplished under the police power. It is a form of regulation for community welfare. Contracts between property owners or between a municipality and a property owner should not enter into the enforcement of zoning regulations.

"Sometimes local legislatures state that they will make certain zoning changes if property owners file agreements either with one another or with the city. This is wrong, unncessary, and unfair. The local legislative body is taking advantage of its superior position whenever it tries to force a property owner to enter into a contract in order to have a permit to which he is entitled. . . ."

See also 2 Metzenbaum, Law of Zoning 973, where it is stated (citing cases from other jurisdictions) :

"Generally, without any evil intent but—on the contrary—with an earnest desire helpfully 'to work out a situation', contracts have been entered into, as between one who seeks a 'variance', on the one hand, and neighboring property owners, on the other hand, or between a municipality (through its zoning board) and an applicant for a variance.

"Such contracts have been frowned upon by the courts and, accordingly, have been set at naught or disregarded by judicial decree".

We do not rule that such agreements are improper in this Commonwealth. However, we do say that the terms and conditions imposed by such often one-sided contracts must be fair and reasonable.

Accordingly, we enter the following:

### FINAL DECREE

And now, November 28, 1966, following argument before a court en banc and consideration of written briefs, it is ordered and decreed that:

1. The decision of the Board of Adjustment of the Township of Haverford is reversed.

2. The following conditions imposed by said board of adjustment pertaining to the operation of the subject property are declared null and void:

"5. The applicant has agreed to certain hours of operation and accordingly no business is to be transacted on the premises nor is there to be any operation on Sundays, and the hours of operation on the other days of the week are confined to the hours between 7:00 A.M. and 10:30 P.M. so that all use and operation must begin no earlier that 7:00 A.M. and cease no later than 10:30 P.M. on those days.

"8. There is to be at least one attendant or employee during all hours of operation and use of the coin operated laundry and dry cleaning establishment".

3. An exception is allowed to the Township of Haverford.